**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SCOTT STEVENS,

    Plaintiff,

v.                                                    Case No. 12-14601
                                                        Hon. Lawrence P. Zatkoff

MIDLAND CREDIT MANAGEMENT, INC.,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 22, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary Judgment [dkt 16, 18]. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

## II. BACKGROUND

**A. FACTUAL BACKGROUND**

In April 2010, Defendant Midland Credit Management, Inc. ("Defendant") began sending collection letters addressed to "Scott R. Stevens" and "Scott Stevens" on various credit card debt accounts owed by Scott R. Stevens. Plaintiff, whose name is Scott E. Stevens, was the recipient of these collection

letters presumably due to the fact that Plaintiff and Scott. R. Stevens share the same date of birth. Plaintiff disregarded, disposed of, or shredded the majority of these correspondences.

On September 6, 2012, Defendant contacted Plaintiff via telephone regarding a HSBC Bank/MasterCard credit card debt ("HSBC account") owed by Scott R. Stevens. During that conversation Plaintiff informed Defendant that he had counsel and provided the counsel's contact information. Defendant does not dispute this. After the September 6, 2012, conversation ended, Defendant did not communicate with Plaintiff—either by telephone or letter—in relation to the HSBC account.

On October 5, 2012, Defendant again contacted Plaintiff via telephone. Although Plaintiff's complaint states that Defendant was inquiring about the HSBC account, he was unable to recall at his deposition what debt Defendant was calling about. In any event, it appears from Defendant's records that the call was regarding another debt owed by Scott R. Stevens—a Capital One Bank/MasterCard credit card debt ("Capital One account").

At the outset of this conversation, Defendant's representative asked Plaintiff if he was Scott R. Stevens, to which Plaintiff replied he was not. Plaintiff then allegedly informed the representative that he had counsel and previously informed Defendant of that fact. Defendant disputes this, alleging instead that Defendant terminated the telephone call after realizing that Plaintiff was not Scott. R. Stevens.

**B. PROCEDURAL BACKGROUND**

On October 17, 2012, Plaintiff filed a complaint against Defendant asserting claims under the Federal Debt Collections Practices Act ("FDCPA") and state law. On November 13, 2012, the Court dismissed Plaintiff's state law claims.

The parties' cross Motions for Summary Judgment are pending before the Court.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion

for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff argues that Defendant contacted him after being previously informed that Plaintiff was represented by counsel in violation of 15 U.S.C. § 1692c(a)(2). Section 1692c(a)(2) states that a debt collector may not communicate with a consumer in connection with collection of a debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address[.]" 15 U.S.C. § 1692c(a)(2).

Defendant concedes that it is "debt collector" and was informed during the September 6, 2012, telephone conversation that Plaintiff was represented by counsel. The contention among the parties here is whether Plaintiff qualifies as a "consumer" under the FDCPA and thus has standing to bring this claim.

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiff posits that, because Defendant alleged Plaintiff was obligated to pay a debt, he fits squarely within the FDCPA's definition of a consumer. Plaintiff further strengthens his position by noting that Defendant only recently became apprised—after Plaintiff's deposition—that Plaintiff was not the actual debtor on the accounts. Thus, at the very least, Defendant was alleging that Plaintiff owed the debts at all times before the deposition took place.

In response, Defendant contends Plaintiff is not a consumer within the meaning of the FDCPA and thus does not have standing to assert a claim under section 1692c. According to Defendant, it was never attempting to collect the debts from Plaintiff, but rather was undertaking collection efforts against Scott R. Stevens. In other words, Defendant asks the Court to adopt the viewpoint that an individual mistakenly contacted by a debt collector—but who does not actually owe the debt—should not be considered a consumer because that individual is not "obligated or allegedly obligated" to pay a debt.

4

Both parties cite to authority from within the Sixth Circuit that purportedly supports their arguments. For instance, Defendant heavily relies on *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003). There, the plaintiff's mother financed the purchase of a car by entering into a personal loan agreement with the defendant and, as collateral for the loan, the defendant took a security interest in the car. While in the plaintiff's possession, the defendant repossessed the car because the mother ceased making payments. The plaintiff then filed a lawsuit against the defendant, alleging various violations under the FDCPA. In analyzing the plaintiff's section 1692c claim, the court found that he lacked standing to bring the claim because "[n]owhere in his complaint d[id] he allege that he is the legal guardian of his mother or that he [was] otherwise obligated or allegedly obligated to pay any debt in connection with the purchase of the [car]." *Id.* at 697.[1]

On the other hand, Plaintiff argues that *Bridge v. Ocwen Fed. Bank, FSB*, 682 F.3d 355 (6th Cir. 2012), forecloses Defendant's position. In *Bridge,* the panel addressed whether a defendant to a FDCPA claim could claim that the defendant's mistake about whether the plaintiff was in default when the defendant attempted to collect from the plaintiff absolved the defendant from liability under the FDCPA. *Id.* at 361. The court was called upon to determine and define the scope of the term "debt collector." In doing so, the court recognized that the FDCPA employs "alleged" or "allegedly" when defining "consumers" and "debt," thus leading to the conclusion that FDCPA applicability "is based upon actual or merely alleged debt." *Id.* In the end, the Sixth Circuit held that "debt collector" included "any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default," irrespective of "whether such treatment was due to a clerical mistake[] or other error." *Id.* at 362.

---

[1] Defendant also cites to cases in the Eastern District that allegedly support its position. *See, e.g.*, *Kaniewski v. Nat'l Fin. Servs.*, 678 F. Supp. 2d 541 (E.D. Mich. 2009); *Gnesin v. Am. Profit Recovery*, No. 12-12595, 2012 WL 5844686 (E.D. Mich. Nov. 19, 2012). These cases, however, too broadly apply the holding from *Montgomery* and, additionally, present facts that differentiate from the current circumstances.

5

Yet, after examination of the foregoing cases, the Court is not convinced that either one of them is factually on point here. First, *Montgomery* dealt with circumstances where the plaintiff did not owe the debt *and* the debt collector (*i.e.*, the defendant bank) never *alleged* that the plaintiff owed the debt. Here, while Plaintiff is not obligated to pay on either account, Defendant *alleged*—albeit erroneously—that Plaintiff owed the debts until Defendant realized Plaintiff was not the proper debtor. And second, the *Bridge* panel never addressed the plaintiffs' status as "consumers" (*i.e.*, conducted a standing analysis) and, additionally, the facts of that case are too tenuous to have any analogous application to the instant matter. Though not binding upon this Court, the Eight Circuit's decision in *Dunham v. Portfolio Recovery Assoc., LLC*, 663 F.3d 997 (8th Cir. 2011), provides persuasive instruction here.

In facts strikingly similar to the instant case, the Eight Circuit held in *Dunham* that the "allegedly obligated" language in the FDCPA extends the Act's protections to persons who have been mistakenly contacted by debt collectors to pay an obligation. 663 F.3d at 1001–02. In *Dunham*, the defendant contacted the plaintiff—who shared the same name as the actual debtor—seeking payment of a debt. The defendant argued that because it erroneously contacted the wrong person, it did not "allege" that the plaintiff was "obligated to pay any debt." The court disagreed, and found as follows:

> In other words, [the defendant] only alleged that the "James Dunham" who actually owes the payment obligation owed a debt, not the "James Dunham" who filed this lawsuit. Thus, [the defendant] contends, Congress's decision to limit § 1692g's protections only to "consumers" reflects a congressional desire to withhold a cause of action for inadequate debt-validation from an individual like Dunham who a debt collector mistakenly contacts. Under [the defendant's] interpretation of the Act, a person who has been abused by a debt collector's harassing tactics, which the FDCPA generally prohibits, could not invoke the protection of the FDCPA if the debt collector contacted the individual by mistake. This interpretation would read the phrase "allegedly obligated" to only apply to those who actually owe or owed the specific debt at issue, despite whether a debt collector asserted a person owes the specific debt.

6

> [The defendant's] position too narrowly constricts the plain meaning of "alleged." Webster's Dictionary defines "allege" as meaning, among other things, "to state or declare as if under oath positively and assuredly but without offering complete proof" and "to assert, affirm, state, without proof or before proving (alleged that the suspect is a kidnapper[)]." Webster's Third New International Dictionary 55 (2002). "Alleged" also means, *inter alia*, "questionably true or of the kind specified: SUPPOSED, SO–CALLED." *Id.* Finally, Black's Law Dictionary defines "alleged" as "1. Asserted to be true as described <alleged offenses>. 2. Accused but not yet tried <alleged murderer>." Black's Law Dictionary 74 (7th ed. 1999).
>
> We find that [the defendant] alleged that Dunham owed a payment obligation. [The defendant] concedes, as it must, that it contacted Dunham with letters demanding that a "James Dunham" pay the payment obligation. If Dunham paid the payment obligation, [the defendant] would have likely found that "James Dunham" satisfied his payment obligation. Therefore, [the defendant] alleged, albeit mistakenly, that Dunham owed the payment obligation. Simply put, a mistaken allegation is an allegation nonetheless. Thus, we read § 1692a(3) to include individuals who are mistakenly dunned by debt collectors.

*Id.* at 1002.

The Court finds the reasoning of the *Dunham* opinion persuasive and, because of its similarity of facts to the instant matter, extends its holding here. Much like the defendant in *Dunham*, in this case Defendant contacted Plaintiff and sought payments of debts owed by another with the same name—albeit the actual debtor had a different middle name. The telephone calls and collection letters sent to Plaintiff—though erroneous—were nevertheless allegations, despite Defendant's contention that it never "alleged" Plaintiff owed an obligation. It is certainly plausible to argue that had Plaintiff tendered payment on these debts, Defendant would have likely found that "Scott R. Stevens" satisfied his payment obligations. Similar to the *Durham* panel, this Court reads section 1692a(3) to include individuals, like

Plaintiff, who are mistakenly dunned by debt collectors. Accordingly, the Court concludes that Plaintiff has standing as a consumer to bring his FDCPA claim.[2]

## CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [dkt 16] is GRANTED to the extent that Plaintiff has standing to bring his FDCPA claim.

IT IS FURTHER ORDERED that Plaintiff's motion is DENIED to the extent that he seeks summary judgment as to liability on Count I in his complaint.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [dkt 18] is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff<br>
Hon. Lawrence P. Zatkoff<br>
U.S. District Judge

Dated: November 22, 2013

---

[2] Because both parties' briefs primarily focus on Plaintiff's status as a consumer, the Court's ruling only relates to that issue. To the extent that Plaintiff makes passing references to entitlement to summary judgment on the merits of his FDCPA claim, the Court finds that neither party offers enough facts for the Court to address FDCPA liability.